**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| MSPA CLAIMS 1, LLC, a Florida limited liability company, | |
| Plaintiff, | Civil Case No. |
| v. | |
| COVINGTON SPECIALTY INSURANCE COMPANY, a foreign profit corporation. | **CLASS ACTION** |
| Defendant. | |

**PLAINTIFF'S CLASS ACTION
COMPLAINT FOR DAMAGES**

## TABLE OF CONTENTS

THE PARTIES ........................................................................................................... 1

JURISDICTION AND VENUE................................................................................... 1

NATURE OF THE ACTION....................................................................................... 2

BACKGROUND FACTS ............................................................................................ 3

    I.    Medicare Advantage Organizations............................................................... 3

    II.   The Medicare Payment Process ...................................................................... 4

    III.  CMS' Standard for Storing Digital Health Insurance Claims Data .............. 4

    IV.  Plaintiff's Use of EDI to Analyze Claims Data and Identify Reimbursement Claims Under the MSP Act. ......................................................................................... 8

PLAINTIFF'S CLASS REPRESENTATIVE CLAIM............................................... 8

CLASS DEFINITION................................................................................................. 13

CLASS ALLEGATIONS............................................................................................ 14

    a.    Numerosity:..................................................................................................... 14

    b.    Commonality.................................................................................................... 15

    c.    Typicality ........................................................................................................ 15

    d.    Adequacy ......................................................................................................... 16

    e.    Ascertainability............................................................................................... 16

CAUSES OF ACTION ............................................................................................... 18

    COUNT I..................................................................................................................... 19
    Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A) ................................. 19

    COUNT II.................................................................................................................... 20
    Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract .......... 20

i

JURY TRIAL DEMAND.......................................................................................................... 21

PRAYER FOR RELIEF......................................................................................................... 21

MSPA CLAIMS 1, LLC, a Florida limited liability company, ("Plaintiff"), on behalf of itself and all others similarly situated, brings this action against, COVINGTON SPECIALTY INSURANCE COMPANY, a corporation ("Covington" or "Defendant"), and states as follows:

## THE PARTIES

1.    Plaintiff, MSPA Claims 1, LLC, is a Florida limited liability company, duly organized, validly existing, and in good standing under the laws of Florida, with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155.

2.    Defendant, Covington, is an insurance company that is authorized to and presently conducts business in the state of New Hampshire, with its principal place of business located at 900 Elm Street, Manchester, New Hampshire 03101.

3.    Complete diversity exists between the parties.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

5.    Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the District of New Hampshire because it is the district in which Defendant resides.

6.    This Court has personal jurisdiction over Defendant as it is the district where Defendant is incorporated, has its principal place of business, is authorized and licensed to conduct business, maintains and carries on systematic and continuous contacts, regularly transacts business, and regularly avails itself of the benefits in this judicial district.

7.    All conditions precedent to this action have occurred, been performed, or have been waived, including meeting any purported threshold amount to the applicable.

1

## NATURE OF THE ACTION

8.      This is a class action lawsuit under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer ("MSP") Act or the MSP Law, arising from Defendant's systematic and uniform failure to reimburse conditional Medicare payments.

9.      Defendant has failed to fulfill its statutory duties under the MSP Law as a "no-fault" insurer. Specifically, Defendant has repeatedly failed to provide primary payment, or reimburse secondary payments made by Plaintiff's assignors and Class Members, on behalf of Medicare beneficiaries enrolled in Part C of the Medicare Act (the "Enrollees") for medical expenses resulting from injuries sustained in an accident (the "accident-related medical expenses"). The Enrollees were enrolled in Medicare Advantage health plans offered by Plaintiff's assignors and Class Members, i.e., Medicare Advantage Organizations ("MAOs"), which suffered an injury-in-fact from Defendant's failure to reimburse, and accordingly, have standing to sue under 42 U.S.C. § 1395y(b)(3)(A).

10.     Plaintiff's assignors and the putative Class Members are MAOs that provided Medicare benefits to the Enrollees. These Enrollees suffered injuries related to an accident and Plaintiff's assignors and the putative Class Members paid for medical items and/or services required by the Enrollees as a result of the accident. Because the Plaintiff's assignors' and Class Members' Enrollees were also covered by no-fault policies issued by the Defendant, Defendant is a primary payer under the MSP Law and must reimburse Plaintiff and the putative Class Members for their payment of accident-related medical expenses.

11.     Congress provided a private right of action to any private entity or individual to enforce the MSP Law and remedy a primary payer's failure to reimburse conditional payments

2

made by original Medicare or an MAO.  As described in detail below, Plaintiff's assignors and the

Class Members have each suffered an injury-in-fact as a result of Defendant's failure to meet its

statutory payment and reimbursement obligations.

12.    On behalf of itself and the Class, Plaintiff seeks, *inter alia*, double damages under

the MSP Law for Defendant's failure to properly reimburse conditional payments for Enrollees'

accident-related medical expenses within the applicable limitations period. This lawsuit, like

others, advances the interests of the MSP Act and Medicare, because when MAOs recover

conditional payments they "spend less on providing coverage for their enrollees" and the

"Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices &*

*Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

## BACKGROUND FACTS

13.    The MSP Law declares that Medicare or MAOs are "secondary payers" to all other

sources of coverage, and, consequently, MAOs that are injured as a result are empowered to recoup

from the rightful primary payer if Medicare or an MAO pays for a service that fell within

overlapping insurance coverage for a Medicare Part C beneficiary.

14.    Defendant is a primary plan under § 1395y(b)(2)(A) because it is a no-fault insurer.

*See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large

group health plan…a workmen's compensation law or plan, an automobile or liability insurance

policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. § 411.21 (same).

### I.    Medicare Advantage Organizations

15.    The Medicare Advantage program, otherwise known as Part C, was enacted in

1997.  Under the Medicare Advantage program, a private insurance company, operating as an

MAO, administers the provision of Medicare benefits pursuant to a contract with CMS. *See* **Exhibit D**, MAO Directory provided by CMS.

16.    CMS pays the MAO a fixed fee per Enrollee and the MAO provides, at minimum, the same benefits an Enrollee would receive under traditional Medicare.  MAOs are a private sector analog to traditional Medicare and have the same rights to reimbursement from primary payers, like the Defendant here.

**II.    The Medicare Payment Process**

17.    An MAO must process and pay or deny claims promptly to comply with the specific requirements established by federal law, federal regulations, and the terms of the its contract with CMS. Federal law requires Medicare and MAOs to pay within 30 days, 42 C.F.R. § 422.520(a), for only those medical expenses that are reasonable and necessary. 42 U.S.C. § 1395y(a)(1)(A).

**III.    CMS' Standard for Storing Digital Health Insurance Claims Data**

18.    It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format.  According the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").[1]

     a.    The 837 standard is mandated by the Federal government and used federal and state payors such as Medicare and Medicaid.

     b.    The 837 standard is also used by private insurers, hospital clinics, physicians and

---

[1] Department of Health and Human Services, Centers for Medicare and Medicaid. Medicare Billing: 837P and Form CMS 1500 (2016), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

    c.    Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

19.    Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

    a.    <u>Dates (including dates of service)</u>: the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

        i.    According to industry best practices and guidelines, and to HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two-digits for the month, DD representing two digits for the day of the month). Sometimes this is alternately expressed as YYYYMMDD.[2]

        ii.    The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[3], 2011[4], 2012[5], 2013[6], 2014[7], and 2016.[8]

---

[2] *See* the Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[3] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 761 dated August 20, 2010, https://www.cms.gov/Regulations-and Guidance/Guidance/Transmittals/downloads/r761otn.pdf.

[4] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 988 dated October 28, 2011, Business Requirements Table II, 7602.1 – Requirement, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[5] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1050 dated February 29, 2012, https://www.cms.gov/Regulations-and Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[6] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1277
Medicare Physician Fee Schedule, dated August 9, 2013, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[7] CMS Medicare Part D 2014 Guidance dated March 10, 2014, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[8] Medicare Plan Payment Group Enterprise Systems Solutions Group

    iii.    CMS has also accepted the MM/DD/YYYY format for its local coverage determination data.  *See* Local Coverage Determination ("LCD") Date of Service Criteria.[9]

    iv.    The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of settlement, can be searched, sorted and properly selected as compensable or non-compensable claims.

    v.    In general, ensuring the accuracy of dates, and other data is essential to performing analysis on claims data files by health insurers, and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

b.    <u>Medical Diagnosis and Procedure Codes</u>:

    i.    Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[10][11]

    ii.    International Classification of Diseases (ICD-9 and ICD-10).  The diagnosis information is reported by the hospital using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of services is before October 1, 2015), or ICD-10 CM if the date

---

Software Release Announcement, https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

[9] CMS.gov.  Local Coverage Determination (LCD) Date of Service Criteria.  https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

[10] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[11] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs." Specifically, beginning in October 2007, CMS began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system.  In a small number of MS-DRGs, classification is also based on the age, sex, and discharge status of the patient. The diagnosis and discharge information is reported by the hospital using codes from the ICD-9-CM or ICD-10 CM if the date of services is on or after October 1, 2015.

of services is on or after October 1, 2015.

iii. Inpatient medical procedures ICD-9 Volume 2 and volume 3 and ICD-10 PCS. These codes are used to describe inpatient medical procedures, excluding the physician's bill.

iv. Current Procedural Terminology ("CPT") - CPT[12] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient physician services. The current version, CPT-4 is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.

v. Ambulatory Patient Classification (APC) - Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical characteristics and similar costs.[13]

vi. Healthcare Common Procedure Coding System (HCPCS) - HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[14]

vii. The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. 162.1002 - Medical data code sets.

viii. The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

ix. Specifically, CMS primarily utilizes two systems of classification: (1) the International Classification of Diseases ("ICD-9") medical diagnosis codes; and (2) Current Procedural Terminology, Fourth Edition ("CPT-4") procedure codes. See 45 C.F.R. 162.1002.

---

[12] CPT codes and descriptions are copyrights of the American Medical Association.

[13] CMS, Hospital Outpatient Prospective Payment System, Partial Hospitalization services furnished by hospitals or Community Mental Health Centers, Ambulatory Payment System, https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[14] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.

IV.    **Plaintiff's Use of EDI to Analyze Claims Data and Identify Reimbursement Claims  Under the MSP Act.**

20.    Using a software system (the "MSP System"), designed and developed by Plaintiff, Plaintiff can capture, compile, synthesize, and funnel large amounts of data to identify claims class-wide. The MSP System captures data from different sources to identify the Class Member enrollees' medical expenses incurred as a result of an automobile accident and which should have been paid for by Defendant. The System can also identify the amounts owed, by using the Defendant's EDI, the MAO's data, and data acquired from outside sources, like the Department of Motor Vehicles, and CMS.

21.    Plaintiff merges Defendant's data with the information available on the MSP System to discover and identify a Medicare eligible person for whom primary medical payments should have been made, along with any information stored as to potential class members.

22.    The MSP System utilizes ICD-9 or ICD-10 CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to identify and obtain any information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier was a no-fault provider.

### PLAINTIFF'S CLASS REPRESENTATIVE CLAIM
### RELATING TO MEDICARE PART C BENEFICIARIES

23.    Plaintiff is the class representative of a class that consists of MAOS and their assignees.  Accordingly, Plaintiff sets forth below an example of Defendant's systematic and uniform failure to fulfill its statutory duties as a "no-fault" insurer. In this example, Plaintiff describes Defendant's failure to reimburse conditional payments and how that failure caused an

injury-in-fact to an MAO, which subsequently assigned its recovery rights to Plaintiff.

**The P.M. claim demonstrates Plaintiff's right to recover for Defendant's
failure to meet its reimbursement obligations under the MSP Law.**

24.     On February 26, 2014, P.M. was enrolled in a Medicare Advantage plan issued and

administered by Florida Healthcare Plus, Inc. ("FHCP").  FHCP is an MAO.

25.     On February 26, 2014, P.M. was injured in an accident in Florida.  At the time of

the accident, P.M. was also insured under a no-fault policy issued by Defendant.  As a direct result

of the accident, P.M. sustained injuries which include but are not limited to the following:

    i.   959.4 – Hand injury nonspecific, except finger injury
    ii.   V54.16 – Aftercare for healing traumatic fracture of lower leg
    iii.   824.2 – Fracture of lateral malleolus, closed
    iv.   733.82 – Nonunion of fracture
    v.   824.8 – Unspecified fracture of ankle, closed
    vi.   726.73 – Calcaneal spur
    vii.   V54.19 – Aftercare for healing traumatic fracture of other bone
    viii.   842.12 – Sprain of metacarpophalangeal (joint) of hand
    ix.   401.9 – Unspecified essential hypertension
    x.   719.44 – Pain in joint, hand
    xi.   782.0 – Disturbance of skin sensation
    xii.   729.89 – Other musculoskeletal symptoms referable to limbs
    xiii.   719.47 – Pain in joint, ankle and foot

A list of the diagnosis codes and injuries assigned to P.M. in connection with P.M.'s accident-

related treatment is attached hereto as **Exhibit A**.

26.     As a direct and proximate result of the accident and the injuries detailed above,

P.M. required medical items and services.  Those medical items and services include but are not

limited to:

    i.   73610 – Radiologic examination, ankle; complete minimum of 3 views
    ii.   73130 – Radiologic examination, hand; minimum of 3 views
    iii.   99204 – Office/outpatient visit new patient

    iv.     L4360 – Walking boot, pneumatic and/or vacuum, with or without joints, with or without interface material, prefabricated item that has been trimmed, bent, molded, assembled, or otherwise customized to fit a specific patient by an individual with expertise

    v.     99214 – Office or other outpatient visit for an established patient

    vi.     73620 – Radiologic examination, foot; 2 views

    vii.     73630 – Radiologic examination, foot; complete minimum of 3 views

    viii.     99215 – Office or other outpatient visit for an established patient

    ix.     99213 – Office or other outpatient visit for an established patient

    x.     20526 – Injection, therapeutic, carpal tunnel

    xi.     J3301 – Triamcinolone acetonide injectable suspension

    xii.     95912 – Nerve conduction tests, 11-12 studies

    xiii.     95886 – Needle electromyography, complete, 5 or more muscles studied

An account of the items and services provided to P.M. as a result of the accident are included within **Exhibit A**. The medical services were rendered by Diagnostic Center of America, Inc., Martha J. Solomon, Hanger Prosthetics & Orthotics, Inc., Joanna Widdows, Amiely Tokayer, and Oscar W. Farronay between February 26, 2014 and November 3, 2014.

       27.    The medical providers subsequently issued bills for payment of the accident-related medical expenses to P.M.'s MAO, FHCP, which was fully responsible for all medical expenses incurred by P.M. FHCP paid $2,347.89 for P.M.'s accident-related medical expenses. While Plaintiff alleges the amount paid solely for purposes of completeness, the medical providers actually billed and charged FHCP $5,503.00 for P.M.'s accident-related medical expenses. The amount of damages recoverable under an MSP Act claim is what an MAO was charged, not what it ultimately paid. *See* 42 C.F.R. § 411.31. Accordingly, Plaintiff seeks double the amount of $5,503.00 as damages for this particular claim.

       28.    Although Defendant failed to report that it was the primary payer for P.M.'s claim to the Centers for Medicare & Medicaid Services ("CMS"), Defendant is liable to pay this amount because it was P.M.'s primary payer, by virtue of a no-fault insurance policy that it issued to Palm

Beach Holdings, LLC, giving rise to a claim under the MSP Act.

29.    Plaintiff has the legal right to pursue this MSP Act claim pursuant to a series of valid assignment agreements.

30.    On April 15, 2014, FHCP assigned all of its rights and claims for subrogation, recovery, and reimbursement against any liable primary payer, including defendant, to La Ley Recovery Systems, Inc. ("La Ley Recovery"). Specifically, Section 1.1 of the agreement states that:

> [b]y way of this agreement, [FHCP] appoints, directs, and otherwise ***assigns*** all of [FHCP's] rights as it pertains to the rights pursuant to any plan, State or Federal statute whatsoever directly and/or indirectly for any its members and/or plan participants.

**Exhibit B**, FHCP-La Ley Assignment § 1.1 (emphasis added).

31.    The agreement authorized La Ley Recovery to assign the agreement to subsequent entities, so long as that assignment was approved. **Exhibit B**, § 1.2. La Ley Recovery assigned the agreement to MSPA. **Exhibit B.1** La Ley-MSPA Assignment. Following that assignment, FHCP approved any subsequent assignments from La Ley Recovery to any then existing or future MSP Company, which includes MSPA as an assignee.

32.    La Ley Recovery's assignment to MSPA was later approved by FHCP's receiver through a settlement agreement ("Settlement Agreement") between FHCP, Inc., MSP Recovery LLC, MSP Recovery Services, LLC, and MSPA Claims 1, LCC, La Ley Recovery Systems Inc., and La Ley Recovery Systems (collectively referred to as the "MSP Companies"). A copy of the Settlement Agreement is attached as **Exhibit B.2**. In the Settlement Agreement, FHCP's receiver acknowledged and agreed to the terms and conditions of the FHCP-La Ley Recovery Assignment Agreement. **Exhibit B.2**, Recitals, § 2(a).

33.    On June 14, 2016, the Leon County Circuit Court approved the terms of the Settlement Agreement, specifically finding "that the Settlement Agreement was negotiated in good faith and is in the best interest of Florida Healthcare Plus, Inc.," and retained jurisdiction to enforce the terms of the Settlement Agreement. **Exhibit B.3**, *In Re: The Receivership of Florida Healthcare Plus, Inc.*, Case No. 2014 CA 2762 (Fla. 2d Cir. Ct. June 14, 2016).

34.    Although not required by the MSP Act, the governing regulations, or interpretive case law, Plaintiff, on December 23, 2015 issued a demand letter to Defendant, which provided Defendant access to the foregoing information regarding the P.M. claim and sought additional information related to reimbursements owed by Defendant to Plaintiff's assignors (the "Covington Demand Letter"). A true and correct copy of Plaintiff's Demand Letter to Defendant is attached hereto as **Exhibit C**.

35.    As shown by the Covington Demand Letter, Defendant had actual and constructive knowledge that it was the primary payer for P.M.'s accident-related expenses.

36.    Accordingly, Plaintiff is entitled to collect double damages against Defendant for its failure to reimburse FHCP's conditional payment for P.M.'s accident-related expenses.

37.    Detailed allegations regarding the foregoing representative claim, i.e., specific payments, coverage determinations, etc., are not required in order to plead an MSP Act claim but, in any event, said information is in Defendant's possession and will be located and assessed through the process of discovery.  However, the allegations set forth herein plainly demonstrate that Plaintiff's assignors suffered damages as a direct result of Defendant's individual failures to reimburse conditional payments as required under the MSP law.

38.    In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment

may be made under [the Medicare statute] for any expenses incurred for items or services which .

. . are not reasonable and necessary for the diagnosis or treatment of illness or injury."

39.     Because this Section contains an express condition of payment – that is, "no

payment may be made" – it explicitly links each Medicare payment to the requirement that the

particular item or service be "reasonable and necessary."

40.     Once an MAO makes a payment for medical items and services on behalf of its

Enrollees, the payment is conclusive proof that the items and services were reasonable and

necessary.

41.     The items and services received by and paid on behalf of the Enrollees, including

P.M. were reasonable and necessary.

All purported conditions precedent to the filing of this lawsuit have occurred, been performed, or

have been otherwise waived by Defendant.

## CLASS DEFINITION

42.     The putative class (hereinafter referred to as "Class Members") is defined as:

All Medicare Advantage Organizations, or their assignees, that provide benefits under
Medicare Part C, in the United States of America and its territories, and that made payments
for a Medicare beneficiary's medical items and services within the last six years from the
filing of the complaint where Defendant:

(1) is the primary payer by virtue of having a contractual obligation to pay for the items
and services that are required to be covered by the policy of insurance of the same Medicare
Beneficiaries that are also covered by a Medicare Advantage plan; and

(2) failed to pay for the items and services or otherwise failed to reimburse Medicare
Advantage Organizations, or their assignees, for the items and services that were provided
for medical items and services related to the claims on behalf of the Medicare Beneficiaries;

This class definition excludes (a) Defendant, its officers, directors, management,
employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action
and any members of their immediate families.

## CLASS ALLEGATIONS

43.     This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members, or their assignees, that paid for their beneficiaries' medical expenses, when Defendant should have made those payments as primary payers and should have reimbursed the Class Members.

44.     As discussed in this class action Complaint, Defendant has failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP Law.  This failure to reimburse applies to Plaintiff, as the rightful assignee of MAOs that assigned their recovery rights to Plaintiff, and to all Class Members.  Class action law has long recognized that, when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm.  This case, thus, is well suited for class-wide resolution.

45.     Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendant to make such payments.  The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers.  Defendant's failure to reimburse Plaintiff and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

46.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy shown as follows:

      a.  **Numerosity:**  Joinder of all members is impracticable. Upon information and

belief, there are hundreds of MAOs (including its assignees), throughout the United

States, that were not reimbursed by Defendant under a policy which provided

Personal Injury Protection ("PIP") or Med Pay coverage for medical expenses

arising out of accidents. Thus, the numerosity element for class certification is met.

b. **Commonality**:  Questions of law and fact are common to all members of the Class.

Specifically, Defendant's misconduct was directed at all Class Members, their

affiliates, and those respective organizations that contracted with CMS and were

identified as "secondary payers" by Medicare Part C.  Defendant failed to make

reimbursement payments, report its Ongoing Responsibility for Medical Treatment

("ORM") involving clients who were Medicare beneficiaries, and ensure that

Medicare remained a secondary payer, as a matter of course.  Thus, all Class

Members have common questions of fact and law, *i.e.*, whether Defendant failed to

comport with its statutory duty to pay or reimburse Plaintiff's assignors pursuant to

the MSP provisions. Each Class Member shares the same needed remedy, *i.e.*,

reimbursement. Plaintiff seeks to enforce their own rights, as well as the

reimbursement rights of the Class Members, for medical payments made on behalf

of their Medicare Part C beneficiaries, as a result of Defendant's practice and course

of conduct in failing to make primary payment or properly providing appropriate

reimbursement.

c. **Typicality**:  Plaintiff's claims are typical of the Class Members' claims, as all have

been damaged in the same manner. Plaintiff's and the Class Members' claims have

the same essential characteristics, arise from the same course of conduct, and share

the same legal theory. As the putative class representative, Plaintiff possesses the same interests and suffered the same injury as the other Class Members, which demonstrates a legally sufficient nexus between Plaintiff's claims and the Class Members' claims. Plaintiff's claims are typical of the Class Members' claims because Defendant failed to make primary payments for Enrollees' accident-related medical expenses, which it was obligated to do by their contractual obligations with Enrollees. Plaintiff's claims are typical because Plaintiff, like the Class Members, has a right to relief for Defendant's failure to make primary payments, or reimburse Plaintiff and Class Members for conditional payments of the Enrollees' accident-related medical expenses. Plaintiff and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendant's business practices, acts and omissions are materially the same with respect to Plaintiff and the Class Members' claims, as will be Defendant's legal defenses. Plaintiff's claims are, therefore, typical of the Class.

d.  **<u>Adequacy</u>**:  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff's interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiff and the putative Class Members.  In addition, Plaintiff is represented by counsel who are competent and experienced in class action litigation, and also have no conflicts.

e.  **<u>Ascertainability</u>**:  Locating members of the Class would be relatively simple, since CMS maintains records of all MAOs, and providing notice to such entities could be accomplished by direct communication.

16

47.     The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior.  Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class. Defendant, whether deliberately or not, failed to make required payments under the MSP provisions and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiff, thus depriving Plaintiff, as assignees of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

48.     It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiff maintains a reasonable methodology for generalized proof of Class-wide impact, using the MSP System designed and developed by Plaintiff and its counsel. The MSP System captures, compiles, synthesizes and analyzes large amounts of data in order to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiff is capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims.  Two other courts have recognized the MSP System as a viable method to prove damages in substantially similar cases wherein the plaintiff, like in this case, asserted an MSP private cause of action breach of contract causes of action. *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017); *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 2015-27940 CA-01 (Fla. 11th Cir. Ct.

2017).

49.     Proceeding with a class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties.  The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

50.     Administering the proposed Class will be relatively simple. Defendant provided no-fault policies with claimants who are also Medicare beneficiaries.  Once that data identifying these policies is compiled and organized, Plaintiff can determine which of the policy holders were Medicare beneficiaries during the applicable time.  Then, using the database, Plaintiff and the Class Members can identify those payments made for medical treatment where the Defendant was (1) the primary payer and (2) for which reimbursement was not made. Indeed, two Florida state classes were recently certified in *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017) and *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 15-27940-CA-21 (Fla. 11th Cir. Ct. 2017) using the same methodology.

## CAUSES OF ACTION

51.     Plaintiff's claims result from Defendant's failure to pay or reimburse Medicare

payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is available. Defendant issues no-fault insurance policies and is thus a primary payer liable under the MSP Law.

**COUNT I**
**Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)**

52.    Plaintiff incorporates by reference paragraphs 1-51 of this Complaint.

53.    Plaintiff asserts a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of itself and all similarly-situated parties.

54.    The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

55.    Defendant's no-fault policy is a primary plan, which rendered the Defendant a primary payer for accident-related medical expenses.

56.    As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, the Class Members and Plaintiff's assignors paid for items and services which were also covered by no-fault insurance policies issued by Defendant.

57.    More specifically, Plaintiff and the Class Members' Medicare beneficiaries were also covered by no-fault, PIP, or medical payments policies issued by the Defendant.

58.    Because the Defendant is a primary payer, the Medicare payments for which Plaintiffs seek reimbursement were conditional payments under the MSP Law.

59.    Defendant was required to timely reimburse Plaintiff's assignors for their conditional payments of the Enrollees' accident-related medical expenses. *See* 42 U.S.C. §

19

1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendant failed to do so.

60.     Plaintiff and the Class Members have suffered money damages as a direct result of Defendant's failure to reimburse the accident-related medical expenses.

61.     Defendant has derived substantial profits by placing the burden of financing medical treatments for their policy holders upon the shoulders of Plaintiff's assignors and the Class Members.

62.     In this case, Defendant failed to administratively appeal Plaintiff's assignor's right to reimbursement within the administrative remedies period on a class wide basis. Defendant, therefore, is time-barred from challenging the propriety or amounts paid.

63.     Plaintiff, for itself and on behalf of the Class, brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendant for its failure to make appropriate and timely reimbursement of conditional payments for the Enrollees' accident-related medical expenses.

## COUNT II
### Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract

64.     Plaintiff incorporates by reference paragraphs 1-63 of this Complaint.

65.     Plaintiff's assignors are subrogated the right to recover primary payment from Defendant for the Defendant's breach of contract with their insured, pursuant to the MSP Law. Specifically, Defendant was contractually obligated to pay for medical expenses and items arising out of an accident, and Defendant failed to meet that obligation. This obligation was, instead, fulfilled by the Plaintiff and other Class Members. Under the MSP provisions, Plaintiff is permitted to subrogate the enrollee/insured's right of action against the Defendant. *See* 42 C.F.R.

§ 411.26.

66.    Plaintiff complied with any conditions precedent to the institution of this action, to the extent applicable.

67.    Defendant failed and/or refused to make complete payments of the Enrollees' accident-related expenses as required by its contractual obligations.

68.    Defendant failed to pay each enrollee's covered losses, and Defendant had no reasonable proof to establish that it was not responsible for the payment.

69.    Defendant's failure to pay the medical services and/or items damaged Plaintiff and the Class Members as set forth herein.  Plaintiff and the Class Members processed medical expenses and are entitled to recover up to the statutory policy limits for each enrollee's medical expenses related to the subject accidents, pursuant to their agreements with CMS and the provider of services.

## JURY TRIAL DEMAND

70.    Plaintiff demands a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

71.    WHEREFORE, Plaintiff, individually and on behalf of the Class Members described herein, pray for the following relief:

a.  find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the Class;

b.  designate Plaintiff as representative for the Class and Plaintiffs' undersigned counsel as Class Counsel for the Class; and

c.  issue a judgment against Defendant that:

i.    grants Plaintiff and the Class Members a reimbursement of double damages for those monies the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A);

ii.    grants Plaintiff and the Class Members a reimbursement of damages for those moneys the Class is entitled to pursuant to their direct right of recovery for breach of contract within Count II;

iii.    grants Plaintiff and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

iv.    grants Plaintiff and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: September 13, 2018                     Respectfully submitted,

/s/ *Tawny L. Alvarez*
Tawny L. Alvarez, Esq.
Verrill Dana LLP
One Portland Square
Portland, ME 04101-4054
(207)774-4000 (Telephone)
(207)774-7499 (Fax)
talvarez@verrilldana.com

Paul W. Shaw, Esq *Pro Hac Vice Pending*
Verrill Dana LLP
One Boston Place, Suite 1600
Boston, MA 02108-4407
(617)309-2600 (Telephone)
(617)309-2601 (Fax)
pshaw@verrilldana.com

*Counsel for Plaintiff*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 13, 2018, I electronically filed with the Clerk of the United States District Court for the District of New Hampshire Plaintiff's Class Action Complaint and Civil Cover Sheet and Summons using the CM/ECF system, which will send notification of such filing(s) to all counsel of record.

Dated:  September 13, 2018

/s/  *Tawny L. Alvarez*
Tawny L. Alvarez
VERRILL DANA LLP
One Portland Square
Portland, ME  04101-4054
(207) 774-4000 (telephone)
talvarez@verrilldana.com

23