```
               UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW HAMPSHIRE
```

MSPA Claims 1, LLC

    v.                                    Civil No. 18-cv-830-JL
                                        Opinion No. 2019 DNH 050

Covington Specialty
Insurance Company

## MEMORANDUM ORDER

Whether this Medicare-secondary-payer case should be transferred to the Southern District of Florida turns primarily on the location of the operative facts and convenience of potential witnesses, but is also informed by that district's resolution of a previous lawsuit between these parties. Plaintiff MSPA Claims 1, LLC alleges that defendant Covington Specialty Insurance Company systematically avoided repaying Medicare Advantage Organizations ("MAOs") for secondary payments as required under the Medicare Secondary Payer Act ("MSP Act"), 42 U.S.C. § 1395y(b)(2)(A). MSPA seeks to represent a nationwide class of MAOs based on a representative claim involving an accident in Florida. MSPA's standing to bring this representative claim depends on whether it was validly assigned the rights of a now-defunct Florida-based MAO. Covington moves under 28 U.S.C. § 1404(a) to transfer the case to the Southern District of Florida. After reviewing the parties' written

submissions and conducting oral argument, the court grants Covington's motion to transfer.

Several private-interest and public-interest factors weigh in favor of transfer, including the important factor of the convenience of potential witnesses. Only MSPA's choice of forum and the relative congestion of the courts weigh against transfer. And MSPA's choice is entitled to lesser weight here because it is bringing a class action, is not a resident of New Hampshire, and previously filed an extremely similar lawsuit against Covington in Florida. Transfer under § 1404(a) is justified.

I. **Applicable legal standard**

"[A] district court may transfer any civil action to any other district where it may have been brought '[f]or the convenience of parties and witnesses, in the interest of justice.'" Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000) (quoting 28 U.S.C. § 1404(a)). "The burden of proof rests with the party seeking transfer; there is a strong presumption in favor of the plaintiff's choice of forum." Id. at 11.

"A properly grounded motion to transfer venue is committed to the discretion of the transferor court, which has wide latitude in determining whether to grant it." Jackson Nat. Life Ins. Co. v. Economou, 557 F. Supp. 2d 216, 220 (D.N.H. 2008)

2

(citing Auto Europe, LLC v. Conn. Indem. Co., 321 F.3d 60, 64 (1st Cir. 2003)).

## II. Background

MSPA is a Florida limited liability company with its principal place of business in Miami, Florida.[1] Covington is a New Hampshire-registered insurance company with a principal place of business in New Hampshire and an administrative office in Atlanta, Georgia.[2]

MSPA alleges that Covington has repeatedly failed to make payments required by the MSP Act. It alleges that the Act requires Covington to reimburse MAOs for accident-related expenses paid out to enrollees in the MAOs' Medicare Advantage health plans if those enrollees were also covered by a Covington no-fault insurance policy.[3] MSPA brings a nationwide class action against Covington on behalf of harmed MAOs.[4]

MSPA outlines a "representative claim" against Covington arising from an accident in Florida.[5] MSPA alleges that the

---

[1] Compl. (doc. no. 1) ¶ 1.

[2] Id. ¶ 2; Def.'s Mem. in Supp. of Mot. to Transfer Venue (doc. no. 12-1) at 2.

[3] Compl. (doc. no. 1) ¶¶ 9-10.

[4] Id. ¶¶ 42-50.

[5] Id. ¶¶ 23-25.

injured party was both enrolled in a Medicare Advantage plan administered by a now-defunct MAO, Florida Health Care Plus ("FHCP"), and covered by a Covington-issued policy on the premises where the accident occurred.[6] FHCP paid medical expenses to the injured party, but MSPA argues that Covington was responsible for these expenses under the MSP Act.[7]

MSPA claims it is the assignee of FHCP.[8] FHCP assigned certain recovery rights to La Ley Recovery, Systems, Inc.[9] La Ley in turn purported to assign rights to MSPA.[10]

The Florida Department of Financial Services was appointed receiver of FHCP.[11] The validity and scope of the purported assignments to MSPA depend in part upon a settlement agreement between the Department of Financial Services, La Ley, MSPA, and other related companies.[12]

MSPA previously brought an extremely similar lawsuit against Covington that was removed to the Southern District of

---

[6] Id. ¶¶ 24-25, 28.

[7] Id. ¶¶ 27-28.

[8] Id. ¶¶ 23-33; Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss Compl. (doc. no. 19) at 2-11.

[9] Compl. (doc. no. 1) ¶ 30.

[10] Id. ¶ 30.

[11] Ex. 4 to Def's Mot. to Dismiss Compl. (doc. no. 10-4).

[12] See Compl. (doc. no. 1) ¶ 32-33.

Florida. MSPA Claims 1, LLC v. Covington Specialty Ins. Co., 212 F. Supp. 3d 1250 (S.D. Fla. 2016).[13] That case was dismissed for lack of standing, but the dismissal turned in part on the fact that standing is determined as of the time when a complaint is filed. Id. at 1257-58. The complaint in that case was filed before the settlement agreement was entered, and the court did not decide whether that agreement would give MSPA standing in a new lawsuit. Id. MSPA argues here that it has standing as a result of the settlement agreement.[14]

Covington moves to transfer this action to the Southern District of Florida, Miami Division.[15] In addition to the previous case between these parties, Covington claims that MSPA

---

[13] That lawsuit involved the same underlying "class representative claim" as this case. See Def.'s Mem. in Supp. of Mot. to Transfer Venue (doc. no. 12-1) at 9. While the parties represented otherwise at oral argument, the record indicates that the injured party "F.C." described by the Florida court is identical to the injured party "P.M." described in MSPA's complaint. Compare Compl. (doc. no. 1) ¶ 24-28 and Demand Letter (doc. no. 1-6) (demanding $15,825.43 based on P.M.'s claim) with MSPA Claims, 212 F. Supp. 3d at 1255 ("FHCP paid for F.C.'s medical expenses, totaling $15,825.43."). The original complaint filed in the Florida action identified the injured party as "P.M." Compl. at 4 n.5, MSPA Claims 1, 212 F. Supp. 3d 1250 (No. 16-cv-20338), ECF No. 1-1.

[14] Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss Compl. (doc. no. 19) at 2-11.

[15] Def.'s Mot. to Transfer Venue (doc. no. 12). Covington has also moved to dismiss the complaint (doc. no. 10) and to strike the class action allegations (doc. no. 11). Because the court grants the motion to transfer, it does not reach these other motions.

5

and related entities have brought numerous other lawsuits involving similar claims against other insurers in the Middle or Southern Districts of Florida, many of which remain pending.[16]

III. **Analysis**

The parties agree that this case "may have been brought" in the proposed transferee district. See 28 U.S.C. § 1404(a). Indeed, MSPA previously filed suit against Covington and the case was removed to the Southern District of Florida. MSPA Claims 1, 212 F. Supp. 3d 1250 (S.D. Fla. 2016).

Transfer therefore turns on whether it would promote "the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), which is assessed by weighing private-interest and public-interest factors. Jackson, 557 F. Supp. 2d at 220. The private-interest factors are:

> [T]he plaintiff's choice of forum; the location of the operative events in the case; the convenience of the parties; the convenience of the witnesses; the cost of obtaining witnesses; the location of counsel; the ability to compel the attendance of witnesses; the accessibility and location of sources of proof; the possibility of a jury view; and the existence of a contractual forum selection clause.

Id. (citing Coady, 223 F.3d at 11).

"The public-interest factors . . . include: administrative difficulties caused by court congestion; local interest in the

---

[16] Def.'s Mot. to Transfer Venue (doc. no. 12) at 3-6.

6

controversy and the burden of jury duty; and the proposed forum's familiarity with the governing law." Id. at 223 (citing Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220-221 (7th Cir. 1986)). These factors are a "helpful starting point, but 'not every item applies in every case and, in the last analysis, the list of factors is illustrative rather than all-inclusive.'" Jackson, 557 F. Supp. 2d at 220 (quoting Iragorri v. Int'l Elevator Inc., 203 F.3d 8, 12 (1st Cir. 2000). Both types of factors weigh in favor of transfer here.

**A.   Private-interest factors**

**1.   MSPA's choice of forum**

"[T]here is a strong presumption in favor of the plaintiff's choice of forum." Coady, 223 F.3d at 11 (citing Gulf Oil Co. v. Gilbert, 330 U.S. 501, 508 (1947). But courts have deemed that choice "less significant in particular situations" including "class actions," "if the plaintiff is not a resident of the forum," and if the plaintiff "appears to be forum shopping." 15 Charles Alan Wright & Arthur R. Miller Federal Practice and Procedure § 3848 (4th ed. 2018); see also Bowen v. Elanes New Hampshire Holdings, LLC, 166 F. Supp. 3d 104, 108 (D. Mass. 2015) (Casper, J.) ("Where the forum has no obvious connection to the case or where the plaintiff is not a forum resident, the plaintiff's presumption carries less weight."); Johnson v. New York Life Ins. Co., No. 12-11026-MLW,

2013 WL 1003432 at *3 (D. Mass. Mar. 14, 2013) (Wolf, J.) ("A plaintiff's choice of forum is less significant . . . in the context of class actions" or where "it would abet a form of forum shopping that should not be encouraged."); Close v. American Honda Motor Co., No. 94-365-SD, 1994 WL 577266 at *2 (D.N.H. Oct. 18, 1994) (deference accorded the plaintiff's choice of forum diminished even further when plaintiff brought suit in forum which was not its "home turf.").

MSPA has alleged few connections between this case and New Hampshire. Covington is a New Hampshire corporation, and MSPA's broad class allegations might, speculatively, involve events in New Hampshire. But MSPA is located in Florida, and the putative class is nationwide.

Most importantly, MSPA previously brought a similar lawsuit against Covington in Florida, which was dismissed for lack of standing. While MSPA presents a reasonable argument that events after the filing of that lawsuit resolved that deficiency, it has not provided any compelling reasoning for bringing this new suit in New Hampshire, rather than Florida. This unquestionably suggests forum shopping, which renders the plaintiff's choice of little weight. Cf. Johnson, 2013 WL 1003432 at *3 ("[W]here, as here, the same counsel has filed class actions asserting the same federal claim in two different districts, and the second claim was filed after the federal claim was dismissed in the

first-filed case, the usual weight given to the plaintiffs' choice of forum is not justified.")

### 2. Location of the operative events

The operative events in MSPA's "class representative claim" occurred entirely in Florida. MSPA also relies on events in Florida to show that FHCP validly assigned its claims to MSPA. MSPA argues that this factor should be neutral, because its class action allegations potentially involve conduct throughout the country. But all the operative facts specifically alleged in the complaint occurred in Florida. This factor weighs in favor of transfer.

### 3. Convenience of the parties

This factor is neutral. MSPA chose to bring this suit in New Hampshire, and New Hampshire is Covington's home state. But Covington, the sole party with a New Hampshire interest, seeks transfer to MSPA's home state. Where neither party has convincingly argued that it would be inconvenienced by proceeding in its home forum, this factor carries little weight.

### 4. Convenience of the witnesses

"The availability and convenience of witnesses is the most important factor in this balancing test." Sousa v. TD Banknorth Ins. Agency, Inc., 429 F. Supp. 2d 454, 457 (D.N.H. 2006) (Barbadoro, J.).

Here, the convenience of witnesses weighs in favor of transfer. MSPA's witness disclosure in the Southern District of Florida case included 13 witnesses, 12 of which were located at the same Miami address as MSPA's counsel in that case.[17] The remaining witness was a representative of the Florida Department of Financial Services, located in Tallahassee, Florida.

Covington's witness disclosure named two individuals associated with RSUI Group, Inc., Covington's parent company, without detail on their location.[18] It also identifies, by category, potential witnesses involved in the representative claim, which had resulted in litigation in Palm Beach County, Florida. These included the injured party, their medical providers, corporate representatives for the insured premises, and defense counsel for the premises. These witnesses likely either reside in Florida or have significant connections to Florida.

All of the non-party witnesses identified in these disclosures have at least some connection to Florida, while none have ties to New Hampshire. As all of the alleged operative facts occurred in Florida, the Southern District of Florida

---

[17] Ex. 2 to Def.'s Mot. to Transfer Venue (doc. no. 12-4).

[18] Ex. 3 to Def.'s Mot. to Transfer Venue (doc. no. 12-5). The address given is in care of Covington's Florida counsel.

10

would likely be more convenient for any other non-party witnesses relevant to the representative claim or the standing inquiry.

MSPA argues that it is too early to tell what witnesses will be necessary at trial, and that any convenience to witnesses is negated by its willingness to concede that any non-party or Covington witnesses may be deposed where they are located and that deposition testimony may be used at trial for any non-party key witnesses unable or unwilling to appear in New Hampshire.[19]  The proposed concessions do not necessarily resolve the potential inconvenience, however, as Covington may have a valid interest in non-party witnesses providing live testimony.

The Southern District of Florida would be at least as convenient as this district for all potential witnesses in this case, and would likely be significantly more convenient for many, especially non-party witnesses.  This factor weighs in favor of transfer.

### 5. Ability to compel attendance of witnesses

"Assessing the relative power of the current venue and the transferee venue to require the attendance of witnesses necessarily focuses on any uncooperative or indifferent

---

[19] Pl.'s Opp. to Def.'s Mot. to Transfer Venue (doc. no. 17) at 4-5.

witnesses who might prefer not to testify at trial." Jackson, 557 F. Supp. 2d at 222. The Southern District of Florida would have greater subpoena powers over Florida-based witnesses than this court. See Fed. R. Civ. Proc. 45(c). While neither party has suggested that they expect uncooperative witnesses in this case, this factor favors transfer.

      **6.    Accessibility and location of sources of proof**

Covington argues that there are documents and public records relevant to this case in Florida. And it claims that it maintains its own records in Atlanta, Georgia, not New Hampshire.[20] Both parties acknowledge that any relevant records may be copied or transmitted in electronic form, so this factor is not significant.[21] But if there are any limitations on the transfer of documents, accessibility would be greater in Florida. This factor, while of little weight, thus favors transfer.

      **7.    Other factors**

Neither party has argued that the cost of obtaining witnesses, location of counsel, possibility of a jury view, or

---

[20] Def.'s Mot. to Transfer Venue (doc. no. 12) at 2.

[21] See id. at 10; Pl.'s Opp. to Def.'s Mot. to Transfer Venue (doc. no. 17) at 5.

existence of a contractual forum selection clause is relevant here. The court likewise affords them no weight in this case.

**B.    Public-interest factors**

**1.    Administrative difficulties**

Neither party addresses the relative level of court congestion in this district and the Southern District of Florida. The Southern District has a higher weighted case load per judge than this district. See Administrative Office of the United States Courts, *Federal Court Management Statistics* (September 2018). But the Southern District's familiarity with related litigation lessens any burden transferring this case would impose. This factor weighs against transfer, albeit not significantly.

**2.    Local interest and burden on jurors**

Resolving whether MSPA has standing to bring this action involves construing a settlement agreement between MSPA and the DFS, a Florida state agency. There is arguably local interest in Florida in resolving a dispute involving the actions of a Florida state agency. To the extent that this factor has any bearing, it thus weighs in favor of transfer.

**3.    Familiarity with governing law**

This factor derives from the principle that it is advantageous for diversity cases to be tried by judges familiar

13

with the applicable state law.  See Coffey, 796 F.2d at 221 (citing Van Dusen v. Barrack, 376 U.S. 612, 645 (1964)).  MSPA's claims are based in federal law.  But determining whether MSPA has standing involves, at a minimum, interpreting a settlement agreement governed by Florida law.[22]  While this court is certainly capable of applying Florida law, this factor favors transfer to a court staffed by judicial officers accustomed to applying Florida law on a daily basis.

    **4.    Judicial economy**

Considerations of efficiency and judicial economy affect whether transfer is warranted.  Well Fargo Fin. Leasing, Inc. v. Tulley Auto. Group, Inc., No. 17-cv-429-JL, 2016 WL 5660290, at *3 (D.N.H. Sept. 29, 2016) (McCafferty, J.); see Van Dusen, 376 U.S. at 616 (purpose of § 1404(a) to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.")  Covington argues that the Southern District of Florida and Eleventh Circuit Court of Appeals' familiarity with the previous case between these parties and related litigation filed by MSPA weighs in favor of transfer.[23]

---

[22] See Settlement Agreement (doc. no. 1-4) ¶ 18.

[23] Def.'s Mot. to Transfer Venue (doc. no. 12) at 10-11.

When parties have previously litigated a case involving similar issues and facts before the transferee court, transfer is favored, because that court's "familiarity with the facts of the case and the applicable law promotes judicial economy." D2L Ltd. v. Blackboard, Inc., 671 F. Supp. 2d 768, 784 (D. Md. 2009) ("Litigation in the same court avoids duplicative litigation when one court has already invested substantial time and energy in the related case."). The Southern District of Florida has experience with the purported assignment of rights to MSPA and MSPA's legal theories. Judicial economy thus weighs in favor of transfer.

IV. **Conclusion**

The important factor of the convenience of witnesses weighs in favor of transfer, as do several other private-interest and public-interest factors. The presumption created by MSPA's choice of forum is lessened here because MSPA is bringing a class action, is not a resident of New Hampshire, and previously filed a nearly identical case against the same defendant that was removed to the transferee court. Only MSPA's choice and the relative congestion of the courts weigh against transfer.

Covington has met its burden justifying transfer to the Southern District of Florida under § 1404(a).

Covington's motion to transfer venue is therefore GRANTED.[24] Covington's motions to dismiss[25] and to strike class action allegations[26] are DENIED, without prejudice to being raised in the transferee venue. The clerk shall transfer this action to the United Stated District Court for the Southern District of Florida.

**SO ORDERED.**

_/s/ Joseph N. Laplante_
Joseph N. Laplante
United States District Judge

Dated: March 21, 2019

cc: Cecilia H. MacIntyre, Esq.
John W. Van Lonkhuyzen, Esq.
Paul W. Shaw, Esq.
Tawny L. Alvarez, Esq.
Ashley Kellgren, Esq.
Michael K. Kiernan, Esq.
Sarah S. Murdough, Esq.

---

[24] Document no. 12.

[25] Document no. 10.

[26] Document no. 11.